J-S39021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA B. DAVIS | |
| Appellant | No. 2351 EDA 2014 |

Appeal from the Judgment of Sentence July 15, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003226-2010

BEFORE:  BOWES, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED October 6, 2015**

Joshua B. Davis appeals from the judgment of sentence entered July 15, 2014, in the Lehigh County Court of Common Pleas, upon the third revocation of his parole and probation, and made final by the denial of post-sentence motions on July 29, 2014.  Davis originally pled *nolo contendere* on October 14, 2010, to the crimes of agricultural vandalism and recklessly endangering another person ("REAP"),[1] and was sentenced to an aggregate term of three to 12 months of county incarceration, followed by a five-year period of probation.  Following the revocation, the court sentenced him to serve the balance of his original term for the parole violation, followed by

---

[1]  18 Pa.C.S. §§ 3309(a) and 2705, respectively.

two to four years of state incarceration for the probation violation. The sole issue on appeal is a challenge to the discretionary aspects of sentencing. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The trial court set forth the factual and procedural history as follows:

[Davis] entered a *nolo contendere* plea to Agricultural Vandalism and [REAP] on October 14, 2010. He was sentenced to three to [12] months less one day in Lehigh County Prison, followed by five years of consecutive probation. He paroled on October 18, 2010. [Davis] completed the parole portion of his sentence. On May 9, 2012, [Davis] appeared before the undersigned for a Gagnon II[2] hearing on a violation of his probation. He conceded the allegations and was resentenced to not less than three nor more than [23] months in Lehigh County Prison followed by three years of probation. On June 11, 2012, [Davis] paroled to the Eagleville Hospital.

An arrest warrant was issued for [Davis] on August 8, 2013 citing a technical violation. On September 10, 2013, [Davis] was found to be in violation following a Gagnon II hearing. His parole was revoked and he was remanded to Lehigh County Prison to serve the balance, followed by another three-year probation sentence.

On May 5, 2014, [Davis] was paroled to the Lehigh County Center for Recovery. [Davis] testified that he attended group sessions at the facility. However, he was discharged from the facility due to noncompliance with the facility's procedures. He caused disruptions in group sessions and in the facility community. [Davis] testified during his Gagnon II hearing that he remained calm during all interactions with staff and left group sessions on his own rather than being removed from them as a result of a disruption.

---

[2] ***Gagnon v. Scarpelli***, 411 U.S. 788 (1973) (discussing revocation hearings).

[Davis] was recommitted on May 14, 2014 on a parole violation based on failure to comply with conditions imposed in his sentence.

On June 11, 2014, the Court conducted a Gagnon II hearing at the close of which it determined that the Commonwealth sustained its burden of proving [Davis] violated the conditions of his parole. Counsel requested that a Presentence Investigation Report be prepared prior to sentencing to assist the Court in understanding [Davis'] mental health challenges.

[Davis] appeared in court for resentencing on July 15, 2014. At that time, [Davis'] parole was revoked and he was remanded to a State Correctional Institution to serve the balance. His probation was also revoked and he was resentenced to one to two years in a State Correctional Institution.

Trial Court Opinion, 9/5/2014, at 1-2.[3] Davis filed a motion for modification of sentence on July 25, 2014. The trial court denied the motion four days later. This appeal followed.[4]

In his sole issue on appeal, Davis contends the trial court "abused its discretion by imposing manifestly unreasonable and improper sentences for a violation of probations without properly considering the requisite statutory

---

[3] To clarify, the court sentenced him to serve the balance of his original term (12 months) for the parole violation on the agricultural vandalism offense. **See** N.T., 7/15/2014, at 22. The court imposed two consecutive terms of one to two years of state incarceration for the probation violation on both the agricultural vandalism and REAP counts. **Id.** at 22-23. The probation revocation sentence is the maximum sentence. **Id.** at 10.

[4] On August 18, 2014, the trial court ordered Davis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Davis filed a concise statement on August 27, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 8, 2014.

factors." Davis' Brief at 11. Specifically, he states, "the Sentencing Court manifestly abused its discretion by imposing sentences of total confinement, the maximums allowed under the law, for a technical violation which occurred less than ten days after his release on parole, which sentences are unreasonable, excessive and disproportional to the violation alleged. *Id.* at 13. Davis does not argue the court ignored or misapplied 42 Pa.C.S. § 9771; rather, he states the sentence imposed exceeded "what is necessary to achieve [the court's ] goal [of vindication], even in light of the case history." *Id.* at 14. In support of this contention, he points the following: (1) he has a long documented history of mental health and substance abuse problems; (2) he was enrolled at the Lehigh Valley Center for Recovery for less than ten days before he was discharged from the program for simply not being in compliance; and (3) he did not physically harm anyone, use drugs, or bring contraband into the facility. *Id.* Davis states the "nature of this violation does not warrant an additional aggregate sentence of two to four years in state prison, on top of the parole balance he already owed (approximately one year)." *Id.* Lastly, Davis asserts the court "characterize[d his] history of violations as a challenge or disregard for the authority of the Court," and failed to properly consider the factors set forth in 42 Pa.C.S. § 9721(b) ("the protection of the public, the gravity of the

offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant"). *Id.* at 15.[5]

The standard of review for a claim challenging a discretionary aspect of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citations and quotation marks omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

---

[5] It bears mentioning that Davis does not challenge the revocation of parole portion of his sentence.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011) (footnotes omitted).

Here, Davis filed a notice of appeal, preserved the issue in a post-sentence motion, and included the requisite statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. Therefore, we may proceed to determine whether Davis has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013).[6]

To the extent Davis argues his sentence was manifestly unreasonable or excessive in light of his assertion that the court did not consider certain statutory factors, such a claim does raise a substantial question. ***See***

_____

[6] With respect to whether an issue presents a substantial question, we are guided by the following:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***See Commonwealth v. Paul***, 2007 PA Super 134, 925 A.2d 825 (Pa. Super. 2007). "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin***, 2013 PA Super 70, 65 A.3d 932, 2013 WL 1313089, *2 (Pa. Super. filed 4/2/13) (quotation and quotation marks omitted).

*Edwards*, 71 A.3d at 330 (citation omitted).

*Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011) ("A claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question."). *See also Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002) (stating that a substantial question is raised when a defendant "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process").[7]

"In general, the imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal." *Commonwealth v. Hoover*, 909 A.2d 321, 322 (Pa. Super. 2006). "[A] sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion." *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000), *appeal denied*, 771 A.2d 1279 (Pa. 2001). "[T]he scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation."

---

[7] *See also Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006) (stating "a claim that a particular probation revocation sentence is excessive in light of its underlying technical violations can present a question that we should review.").

*Commonwealth v. Infante*, 888 A.2d 783, 790 (Pa. 2005) (citation omitted).

Upon the revocation of a defendant's probation, a trial court may impose any sentencing option that was available under the Sentencing Code at the time of the original sentencing, regardless of any negotiated plea agreement. 42 Pa.C.S. § 9771(b); *Commonwealth v. Wallace*, 870 A.2d 838, 843 (Pa. 2005). Moreover, "[t]he trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Fish*, 752 A.2d at 923. Section 9771(c), however, limits the trial court's authority to impose a sentence of total confinement upon revocation unless one of three circumstances are present:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c). Furthermore, it is well-established that "[t]echnical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." *Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa. Super. 2007).

"In addition, in all cases where the court resentences an offender following revocation of probation ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of

the reason or reasons for the sentence imposed [and] [f]ailure to comply with these provisions shall be grounds for vacating the sentence or resentence and resentencing the defendant." **Commonwealth v. Cartrette**, 83 A.3d 1030, 1040-1041 (Pa. Super. 2013) (internal quotations omitted); 42 Pa.C.S. § 9721(b). "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Commonwealth v. Crump**, 995 A.2d 1280, 1282-1283 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010).

Although Davis contends the sentence imposed by the trial court following revocation was excessive, it bears remarking that he does not assert the sentence imposed by the court was beyond the statutory maximum. Nor does the record support such an assertion. Rather, the record reveals the following: Davis has a prior criminal history, in which he was previously incarcerated. **See** Presentence Investigation Report, 9/26/2014.[8] This was his third probation violation in the underlying matter. **See** N.T., 6-11/2014, at 33-34.

At the June 11, 2014, **Gagnon** hearing, the Commonwealth presented the following evidence to demonstrate Davis violated conditions of his

_____

[8] **See also** N.T., 7/15/2014, at 3 (trial court indicating it had received a copy of the presentence investigation report).

probation: Elizabeth Duncan, the supervisor of the Adult Probation Department, testified "[t]he nature of the violation is that [Davis] was required to participate in any inpatient or outpatient mental health or dual diagnosis treatment. He was paroled to Lehigh County Center for Recovery on May 5th, 2014, and was unsuccessfully discharged from that program on May 14th, 2014." *Id.* at 5-6.

Dr. Muhamad Rifai, the medical director at the Lehigh County Center for Recovery, testified patients receive a list of rules and regulations in terms of compliance with the facility, including non-disruptive, non-threatening behavior, when they are admitted the center. *Id.* at 9. With respect to Davis, Dr. Rifai stated:

> During [Davis'] stay, he became disruptive in group. He became threatening to staff as well as other patients and verbalized to myself threatening remarks to some of his family members as well as to other staff and became very intimidating toward patients and the staff. And it became a danger to keep him in our facility because we're an outpatient treatment facility. We're an unlocked unit -- and considered further treatment for him through the involvement with the correctional system.

*Id.* at 10. Specifically, Dr. Rifai testified Davis "made several remarks about being able to harm other individuals very easily. He made gestures as well as drawings that were very, very concerning in terms of drawing cut-off heads that we considered very threatening from our perspective as mental health treatment experts." *Id.* at 10. Additionally, Dr. Rifai stated Davis said that "he had martial arts skills and it was easy for him to chop off somebody's head, and he made that remark about his own father, but he

- 10 -

said his father was not here. He was in Saudia [sic] Arabia. So that would not be a practical threat." *Id.* at 13.

Davis also testified at the hearing. He stated he was diagnosed with "[b]ipolar with psychotic tendencies, borderline schizophrenia, intermittent personality disorder, explosive anger disorder, post traumatic stress." *Id.* at 22. Davis did not agree with Dr. Rifai's assessment that he was disruptive in the group setting or that he made threats to the staff. *Id.* at 23.

At the July 15, 2015 hearing, the court explained its rationale for Davis' sentence: "I think, for better or worse though, Davis' mental health condition has reached a level which is really beyond the capacity for us to assist at the county level." N.T., 7/15/2015, at 22. The court further opined:

> In this case, [Davis] was sentenced to serve the remaining balance of his parole and also to a period of one to two years in a State Correctional Institution. As the Court explained at the time of sentencing, this was based on several factors. [Davis]'s mental health challenges have led to a series of difficulties in the mental health community supervisory setting. He was disruptive in group sessions and has anger issues that need to be addressed. The psychological evaluation indicated that he was malingering. Additionally, the Court had the opportunity to observe [Davis] in court on several occasions and noted on the record that [Davis'] challenges are better suited for care and treatment in the State system than through the county resources available. [Davis'] mental health challenges render him likely to reoffend, and it is appropriate to place him in a correctional setting capable of addressing these challenges so as to reduce the likelihood that he will reoffend.

> [Davis] has a long history of noncompliance with supervision. The majority of his supervision periods have been revoked. The Court received testimony indicating that [Davis] is

- 11 -

a difficult individual to supervise and rehabilitate as a result. A sentence of confinement rather than probation was appropriate to provide the proper medication and psychotherapeutic settings to address [Davis'] mental health challenges, to ensure his own safety, to protect the community, and to preclude him from reoffending during the period of incarceration. The sentence was lawful and proper and should be affirmed.

Trial Court Opinion, 9/5/2014, at 5-6.

In light of the evidence, we view the violations leading to Davis' probation revocation much differently than he suggests, noting his actions was not a mere technical violation. Accordingly, we conclude Davis' conduct while at the treatment center demonstrates a concern with respect to his mental health issues as well as a lack of intent to reform, and that a sentence of state imprisonment is essential to vindicate the authority of the trial court. *See Commonwealth v. Cappellini*, 690 A.2d 1220, 1225-1226 (Pa. Super. 1997) (although trial court did not make specific finding that sentence of total confinement upon revocation of probation was necessary pursuant to Section 9771(c)(2) and (3), the record was sufficient to support such a finding). Therefore, because the trial court properly considered the applicable factors in formulating its sentence, and the sentence did not exceed the statutory maximum, we find the trial court did not abuse its discretion in revoking Davis' probation and imposing a term of state imprisonment.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/6/2015